NOT DESIGNATED FOR PUBLICATION

No. 114,712

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee*,

v.

JASON ALBIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed November 10, 2016. Reversed.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, *James Crux*, legal intern, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., LEBEN and GARDNER, JJ.


GARDNER, J.:  Jason Albin appeals from a bench trial which found him guilty of lewd and lascivious behavior for publicly exposing his sex organ with intent to arouse his own sexual desires. Finding insufficient evidence that Albin "publicly exposed" his sex organ, we reverse.

*Factual and procedural background*

The facts in this case are undisputed and uncomplicated. In May 2015, Albin drove his commercial truck into the parking lot of Alliance Data, a call center at which he did not work. It was mid-morning, and persons were working at Alliance Data. Albin parked his truck at the far end of the lot where the nearest car was 40 to 50 feet away and where there were no pedestrians.

A security officer at Alliance Data noticed the truck enter the parking lot and focused a security camera on it. That camera was located in one corner of the parking lot, mounted above the cars. The officer zoomed the camera in on the driver's side of the truck's windshield, shooting down, and concluded that Albin was masturbating in his truck. Albin drove the truck out of the parking lot a few minutes after he had entered it. The security officer notified police, who stopped Albin.

The State charged Albin with lewd and lascivious behavior. At the bench trial, the State presented the following evidence: a video recorded by the security camera, testimony of the security officer, a stipulation that Albin was in the truck that day, and testimony of the Lenexa police officer who stopped Albin.

The police officer testified that Albin, when confronted by the police officer, stated:

> "'I was driving between jobs when I just started to get horny and got an erection. I tried to think about other stuff and it didn't go away. I noticed a parking lot so I pulled in and covered up the window and masturbated. Then I left . . .'"

The police officer also testified that Albin had told him he did not think he would be seen and that he was trying not to be seen.

2

The security officer testified, "[I]t appeared to be that it looked like [Albin] was masturbating in the vehicle." When asked if he observed movements that he believed to be "consistent with masturbation," he responded, "Yes." No more specific testimony was given. The security officer agreed that Albin probably would not have known a camera was there, and that had he not zoomed the camera in, he would not have been able to see Albin's movements in his truck.

The security video showed no vehicles or persons near Albin's truck during the event. The video is of poor quality due in part to the reflection of a tree on the front windshield of Albin's truck, which largely obscures the camera's view of the driver. The video does not show Albin's sex organ or any movements that would compel the conclusion that Albin masturbated in his truck. The police officer, however, testified he was able to tell from viewing the video that Albin was doing so. The district court discredited Albin's statement that he had tried to cover the window, finding the video did not show any such acts.

After the bench trial, the district court found Albin guilty of lewd and lascivious behavior in violation of K.S.A. 2015 Supp. 21-5513 (a)(2) by publicly exposing his sex organ with the intent to gratify his own sexual desires on May 15, 2015, in the parking lot at Alliance Data. Albin timely appeals, claiming insufficient evidence supports his conviction.

*Standard of Review*

When reviewing a mixed question of law and fact, an appellate court applies a bifurcated standard. The district court's factual findings are generally reviewed under the substantial competent evidence standard. The district court's conclusions of law based on those facts are subject to unlimited review. See *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011). Statutory interpretation is a question of law subject to unlimited review.

3

Substantial evidence refers to legally admitted, relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all of the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

*Discussion*

Lewd and lascivious behavior is defined, in relevant part, as:  "[P]ublicly exposing a sex organ or exposing a sex organ in the presence of a person who is not the spouse of the offender and who has not consented thereto, with intent to arouse or gratify the sexual desires of the offender or another." K.S.A. 2015 Supp. 21-5513(a)(2). Albin was convicted of publicly exposing his sex organ with intent to arouse or gratify the sexual desires of the offender, so we focus our discussion on that section of the statute. Albin admits that he masturbated in his truck. However, he argues that he did not "expose" his genitals "publicly" and, alternately, that he did not intend to derive sexual gratification from his incidental exposure, but from the act of masturbation.

*The meaning of "expose" in the statute*

The proper interpretation of the terms in the statute requires us to apply the canons of statutory construction. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). The court must first attempt to ascertain legislative intent through an analysis of the language employed, giving ordinary words their ordinary meaning. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). The general rule is that a criminal statute must be strictly construed in favor of the accused.

4

This rule of strict construction, however, is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Cox*, 258 Kan. 557, Syl. ¶ 7, 908 P.2d 603 (1995).

Both parties cite *State v. Bryan*, 281 Kan. 157, 130 P.3d 85 (2006), the sole Kansas case examining the statute's definition of "exposing." But there, unlike here, exposing in the presence of another person was at issue. The specific issue was "[w]hether K.S.A. 2004 Supp. 21-3508(2) requires a victim to be aware of the offender's exposed sex organ." 281 Kan. at 158. Our Supreme Court concluded that it does not, and that in such cases the offender's awareness of the presence of a victim is sufficient. 281 Kan. at 167.

The Supreme Court in *Bryan* defined expose as: "'lay open to view: lay bare: make known: set forth.'. . . Synonyms . . . include show or exhibit." 281 Kan. at 159 (citing Webster's Third New International Dictionary 802 [1993]). "This meaning limits the verb [expose] to the act itself without requiring someone to actually perceive what has been exposed." 281 Kan. at 159. Thus, using the ordinary definitions of the terms "exposing" and "presence," the court defined the lewd and lascivious behavior under that subsection as "showing or exhibiting a sex organ in a place where a victim . . . is within the offender's . . . range of perception, and committed with the intent to arouse or gratify the sexual desires of the offender or another." 281 Kan. at 166.

We define "expose" as the Supreme Court did in *Bryan.* Albin correctly contends that not even the security camera footage, shot from above through his front windshield and zoomed in to the passenger side of his truck, shows his sex organ. The security officer never testified that he saw Albin's sex organ, that Albin had unzipped or removed his pants, or what movements he saw that led him to conclude Albin was masturbating in his truck. Thus, no facts of record establish that Albin's sex organ was shown, uncovered, visible, or otherwise exposed.

5

*The meaning of "publicly" in the statute*

Nonetheless, viewing the evidence in the light most favorable to the State, one could find that Albin's admission to having masturbated gives rise to a reasonable inference that in so doing he exposed his sex organ. We thus reach Albin's contention that any exposure was not done "publicly" as the statute requires.

Kansas cases have not defined "publicly" as used in this statute. Black's Law Dictionary does not define that adverb, but it defines the noun "public" as: "1. The people of a country or community as a whole <a crime against the public>. 2. A place open or visible to the public <in public>." Black's Law Dictionary 1422 (10th ed. 2014). The State relies on the latter definition, which focuses on a place, while Albin essentially relies on the former, which focuses on people.

The State contends that Albin's exposure violated the statute because it was done in a public location—a parking lot which vehicles could enter and exit at any time. The district court adopted the State's position and concluded that Albin exposed his penis publicly, explaining:  "Clearly, Mr. Albin was aware he was in a public place, that he was in his vehicle, but certainly viewing was available to the rest of the world." But the State relies on cases from other jurisdictions whose statutes, unlike ours, prohibit lewd acts "in public." See, *e.g.*, *People v. Lino*, 447 Mich. 567, 527 N.W.2d 434 (1994) (upholding a conviction where the defendant was seen doing an act of "gross indecency" while parked in a vehicle in a restaurant parking lot because the restaurant parking lot was a public place).

The Kansas statute under which Albin was convicted does not require that the exposure of one's sex organ be done "in a public place." Instead, the Kansas statute was amended from prohibiting "the exposure of a sex organ in a public place" to prohibit "publicly exposing a sex organ." Compare K.S.A. 21-3508(1)(b) (Ensley 1988) (effective

6

in 1983) with K.S.A. 21-3508(a)(2) (revised effective July 1, 1993) and K.S.A. 2015 Supp. 21-5513(a)(2). When the legislature revises an existing law, we presume that the legislature intended to change the law as it existed prior to the amendment. *State v. Snellings*, 294 Kan. 149, 157, 273 P.3d 739 (2012). Accordingly, we are not persuaded that the State's interpretation of this term is correct.

But even if the current statute prohibited exposure in a public place, the facts of this case do not necessarily meet that requirement. As the State concedes, whether a parking lot is considered public often depends on whether another person could reasonably see the complained-of action. Although Kansas cases have not addressed this issue, other jurisdictions have persuasively held that the interior of a truck parked in a public lot where no persons are able to see the interior is not necessarily a public place. For example, in *People v. McNamara*, 78 N.Y.2d 626, 578 N.Y.S.2d 476, 585 N.E.2d 788 (1991), the Court of Appeals found that allegations of sexual activity in parked cars at stated addresses, three of which were public streets in residential areas, were not alone sufficient to establish the public place requirement of its lewd and lascivious statute. The court reasoned that the interior of a parked car could be considered a public place only "where the objective circumstances establish that lewd acts committed there can, and likely would, be seen by the casual passerby, whose sensibilities the statute seeks to protect." *McNamara*, 78 N.Y.2d at 633-34.

Similarly, in *People v. Davis*, 164 Misc. 2d 89, 90, 624 N.Y.S.2d 353 (Crim. Ct. 1994), the court affirmed a conviction under its penal law stating: "'A person is guilty of public lewdness when he intentionally exposes the private or intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place.'" But it held that merely doing a lewd act in a public place was insufficient, stating:

> "While it is true that the mere occurrence of a lewd act in a place to which the public has access will not of itself constitute a violation of the statute, these allegations provide

7

sufficient indicia that defendant was situated in an area from which his lewd acts could readily be observed by members of the passing public." *Davis*, 164 Misc. 2d at 92.

Other cases similarly find that the "public" or "publicly" element of lewd and lascivious statutes requires foreseeability that one's acts may be seen by another. See, *e.g.*, *State v. Piltz*, 277 Wis. 2d 875, ¶10, 690 N.W.2d 885 (2004) (unpublished opinion) (reviewing jury instruction for lewd and lascivious which defined "publicly" as: "'in such a place or manner that the person knows or has reason to know that the conduct is observable by or in the presence of other persons'"); accord *Com. v. Nicholas*, 40 Mass. App. 255, 257, 663 N.E.2d 266 (1996) (finding "[t]he Commonwealth must prove that the likelihood of being observed by casual passersby must have been reasonably foreseeable to the defendant, or stated otherwise, that the defendant acted upon an unreasonable expectation that his conduct would remain secret"); *cf. People v. Ridens*, 59 Ill. 2d 362, 385, 321 N.E.2d 264 (1974) (Davis, J., dissenting) (examining obscenity statute which defined "'displays publicly'" as "'the exposing, placing, posting, exhibiting, or in any fashion displaying in any location, whether public or private, an item in such a manner that it may be readily seen and its content or character distinguished by normal unaided vision viewing it from a public thoroughfare, depot or vehicle"). We find these cases to be well-reasoned.

We also find Albin's arguments to be persuasive. First, he contends he did not "publicly expose" his sex organ because no member of the public was anywhere near him at the time of his act. The testimony of the security camera operator confirms that Albin's truck was in the corner of the lot, about 40 to 50 feet away from other vehicles, and that no pedestrians were in the area at that time. Albin was parked in an area where no one would have to pass by his truck to enter the business or their cars. No one saw Albin's sex organ, even with the assistance of a security camera of which Albin was unaware, mounted high above the vehicles and zoomed in on his movements.

Second, Albin relies on the fact that he did not think he would be seen and that he took action so he would not be seen, as he told the police officer who stopped him soon after the event. We believe Albin's subjective intent as to this element is irrelevant. The relevant question in determining the public nature of the act is whether it was reasonably foreseeable that Albin's act would be seen by another. The facts noted above demonstrate that Albin took acts to avoid being observed by others. Albin also told the police officer that he had covered the window before the act. The district court judge resolved that question against Albin because the video did not show him covering the window. But the evidence shows that at least 86 seconds of the video are missing, without explanation. Albin could have tried to cover the window during the time not captured on the video, so the district court's finding that Albin did not try to cover the window is unsupported. The video does not conclusively show that Albin did or did not cover the window of his truck. But the undisputed facts fail to show it was reasonably foreseeable that Albin's act would be seen by others or, conversely, that Albin acted upon an unreasonable expectation that his conduct would remain secret.

Third, Albin asserts that he had a reasonable expectation of privacy in acts done in his lawfully possessed vehicle, citing *California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985), a Fourth Amendment case. The State responds that this is not a Fourth Amendment case. Yet the fact that Albin's act occurred in a commercial truck should not be ignored—its boxy structure and heightened elevation provided a greater degree of privacy or cover for Albin's acts within its passenger compartment than if the same acts had been done inside a car or outside the truck.

Even the cases cited by the State demonstrate that the time, place, and manner of acts alleged to be lewd and lascivious determine their public nature. See, *e.g.*, *State v. Cutro*, 37 Conn. App. 534, 539-40 657 A.2d 239 (1995) (finding a reasonable expectation that people would be able to view the defendant's action when he masturbated in his car in the parking lot of a mall shortly after it closed and was seen by two teenage girls);

9

*Douglas v. State*, 330 Ga. App. 549-50, 768 S.E.2d 526 (2015) (finding sufficient evidence to convict for public indecency by a lewd exposure of sexual organs when a witness saw defendant masturbating on a bench outside a shopping mall and could clearly see his exposed penis); *Moton v. State*, 332 Ga. App. 303, 304-05, 772 S.E.2d 396 (2015) (finding sufficient evidence to convict under that same statute when a witness saw a man pull his erect penis from his pants and begin to masturbate in a public library). The evidence in this case failed to show that if anyone had driven by or walked by Albin's truck at the time of his lewd act they reasonably could have seen what was happening in its passenger compartment.

As the State concedes, a conviction under the statute "does not require any engagement but rather only an exposure that is likely to be seen." Given the undisputed facts, we find that the State failed to show that Albin's exposure, if any, was done "publicly." No evidence established that another person did see or reasonably could have seen Albin's sex organ or that it was reasonably foreseeable to Albin that his acts would be seen by another.

Because we find insufficient evidence that Albin "publicly exposed" his sex organ within the meaning of those terms in the statute, we do not reach Albin's argument regarding his lack of specific intent.

Reversed.